UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANENE NIEDERKORN HARRISON,

       Plaintiff,

v.                                          Case No.  8:20-cv-0285-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

       Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claims for Supplemental Security Income ("SSI") and period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

       **I.**       **Procedural Background**

Plaintiff filed applications for SSI and a period of disability and DIB (Tr. 214-21).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 77-132).  Plaintiff then requested an administrative hearing (Tr. 154-55).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-64).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr. 14-26).  Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-4).  Plaintiff then

timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff was born on July 20, 1980 and was 38 years old on her administrative hearing date (36 on her alleged onset date) (Tr. 39, 216).  Plaintiff claimed disability beginning October 23, 2016 due to Marfan syndrome, lower back pain, depression, anxiety, and epilepsy (Tr. 255).[1]  She graduated high school (Tr. 34), and her past work experience includes waiting tables at IHOP, where she worked her way up to trainer and then night shift supervisor after five years (Tr. 40).  She had a grand mal seizure at work on Christmas Eve of 2014 (Tr. 326).  Afterwards, she returned to IHOP but, in the words of her manager, she "appeared very frail and unable to complete her duties" (*Id.*).  So, in October 2016 (Plaintiff's onset date), she took a year-long medical leave of absence (*Id.*).  She felt able to return to work part-time at IHOP in October 2017.  At the time of her hearing, she was working about 10 hours per week with restricted duties, like frequent breaks and lifting no more than five pounds (two or three plates of food at a time) (Tr. 44-46).

Plaintiff and her husband live with their six children and three dogs (Tr. 51).  She has a driver's license and sometimes drives her children to school.  Her husband does all the cooking and cleaning for the household while she pays the bills (Tr. 52, 54, 56).  With her kids at school and her husband at work during the day, Plaintiff's sister comes over to

---

[1] Marfan syndrome is a genetic disorder that affects the body's connective tissue. Features of the disorder are most often found in the heart, blood vessels, bones, joints, and eyes and can get worse over time.  *See* www.marfan.org/about/marfan.

2

check on her regularly, and they watch crime shows together (Tr. 55). Otherwise, when she is not working, she rests in her bed and "literally do[es] nothing" due to her back pain, migraines, and seizures and the side effects of her medications (Tr. 52).

In rendering his February 12, 2019 administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 (her date last insured, or "DLI," for DIB purposes) and had not engaged in substantial gainful activity since October 23, 2016, the alleged onset date (Tr. 17).[2] After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the severe impairments of degenerative disc disease and epilepsy (*Id.*). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then concluded Plaintiff retained the residual functional capacity ("RFC") to perform light work with these limitations: "The claimant can never climb ladders, ropes, or scaffolds. She should not work around heavy vibration or hazards, such as open moving machinery or unprotected heights." (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established to presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limited effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20).

---

[2] The ALJ determined that Plaintiff did not earn enough at IHOP after her onset date for it to constitute substantial gainful activity (Tr. 17).

Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a waitress and shift supervisor and could also work other light exertion jobs such as mail room clerk, laundry sorter, and survey worker (Tr. 24-25). The ALJ found Plaintiff not disabled (Tr. 26).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe

impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the

proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV. Analysis

Plaintiff argues the ALJ erred in discounting the opinion of her treating nurse practitioner, Emma McMicken, A.R.N.P., who opined on October 5, 2017 that Plaintiff could return to work but only for two to three days per week, no more than four hours at a time, and only if she lifts no more than five pounds (Doc. 12 at 7-10; Tr. 624). The Commissioner contends the ALJ properly discounted Ms. McMicken's opinion because she was not a treating source (meaning the ALJ does not need "good cause" to discount it), and her opinion is inconsistent with the medical evidence (Doc. 12 at 12-14). The undersigned agrees with the Commissioner.

As the parties point out, under the regulations in effect when Plaintiff filed her claim, a nurse practitioner is not an "acceptable medical source" for purposes of establishing an impairment. 20 C.F.R. §§ 404.1502(a), 416.902(a).[3] Instead, under then-existing regulations, a nurse practitioner is an "other" medical source used to show the severity of impairments and how these impairments affect the claimant's ability to work.

---

[3] The SSA amended its regulations with respect to claims filed after March 27, 2017, to include advanced registered nurse practitioners as acceptable medical sources. 20 C.F.R. §§ 404.1502(a)(7); 416.902(a)(7). Plaintiff filed her claim on November 7, 2016; the previous version of the regulations applies.

Opinions from nurse practitioners are "important and should be evaluated on key issues such as impairment severity and functional effects." *See* SSR 06-03p (Aug. 9, 2006).[4]

Specifically, SSR 06-03p provides:

With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources .... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. This ruling directs the ALJ to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.*

Here, the ALJ did not run afoul of SSR 06-03p, as Plaintiff contends. Ms. McMicken and Jeffrey Puretz, M.D. of Lakeland Volunteers in Medicine treated Plaintiff nine times between February 22, 2016 and February 14, 2017 for back, hip, and pelvic pain, migraines, seizures, anxiety, and depression (Tr. 465-95, 515-20).[5] Ms. McMicken assessed Plaintiff with Marfan syndrome, migraines, epilepsy with recurrent grand mal seizures, depression, and anxiety, among other impairments (Tr. 467). She periodically

---

[4] When the SSA amended the regulations for evaluating medical opinions, the agency also rescinded SSR 06-03p as inconsistent with the new regulations. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-03p, 2017 WL 3928298 (Mar. 27, 2017). This rescission is only "effective for claims filed on or after March 27, 2017." *Id.* at *1. Because Plaintiff filed her disability applications prior to that date, SSR 06-03p still applies to her case.

[5] Ms. McMicken treated Plaintiff eight times, while Dr. Puretz of the same practice treated Plaintiff once (Tr. 479-80).

adjusted Plaintiff's dose of Depakote (an anticonvulsant) to keep her at therapeutic levels (Tr. 475, 492, 515). For example, on January 5, 2017, Plaintiff reported to Ms. McMicken she had a mild seizure the day before while home alone (Tr. 520-21). Ms. McMicken increased Plaintiff's Depakote levels and advised her to schedule an appointment with her neurologist, Thomas DiGeronimo, M.D. (*Id.*). When Plaintiff treated with Ms. McMicken for a final time the next month, the nurse practitioner noted that a CT scan of Plaintiff's brain was negative, but her Depakote levels were still too low (Tr. 515).

Then, on October 5, 2017 (eight months after she last treated Plaintiff), Ms. McMicken completed a short work/school excuse form stating that Plaintiff can return to work provided it is only for two to three days per week, no more than four hours at a time, and that she lifts no more than five pounds at a time (Tr. 624). The ALJ considered this opinion (which conflicts with the ALJ's determination that Plaintiff can return to light work) but assigned it "only some weight . . . as the claimant has continued to work as a waitress on a part-time basis since the fourth quarter of 2017." (Tr. 23). According to Plaintiff, this reason for discounting Ms. McMicken's opinion is invalid, because Plaintiff only worked within the restrictions Ms. McMicken imposed (Doc. 12 at 9-10). And, Plaintiff emphasizes, her boss at IHOP, Rick Roberts, wrote that she struggles to perform her duties even with these restrictions (Tr. 326). Plaintiff testified that Mr. Roberts permits her to sit down in the back room at work when she needs to, an accommodation he does not make for anyone else (Tr. 44).

Before discounting Ms. McMicken's October 5, 2017 form, the ALJ reviewed the medical and opinion evidence. Plaintiff treated with neurologist Dr. DiGeronimo and

nurse practitioner Sheri Mehl from November 2015 through July 2018, for seizures, migraines, and back pain (Tr. 393-455, 531-613). Their records consistently note that "[t]he patient had 3 seizures the week before Thanksgiving, 2014. Her previous last seizure was Christmas of 2013." (Tr. 394, 445, 450, 454, 533, 537, 541, 545). A May 2016 EEG report was normal (Tr. 457). Regarding her back pain, a June 2016 lumbar spine MRI showed mild facet arthropathy at L4-L5 and L5-S1, with no acute bony abnormality, focal bulge, or stenosis (Tr. 456).

Still, Plaintiff reported that her right side back pain was constant and increasing. She had back spasms and a decreased range of motion, yet her motor strength was 4.5/5 in her right hip, knee, and ankle, and she walked independently with a normal gait (Tr. 546). Dr. DiGeronimo prescribed trigger injections, hydrocodone, and tizanidine for muscle spasms (Tr. 557-58). Over his years of treating Plaintiff, he did not recommend Plaintiff undergo more invasive treatment measures; to the contrary, he encouraged her to do low-impact exercises like swimming or biking, strengthen her core, drink more water, and stretch (Tr. 396, 411).

In January 2017, after Plaintiff reported her mild seizure to Ms. McMicken, Dr. DiGeronimo concurred that Plaintiff's Depakote levels were not at therapeutic levels (Tr. 531-33). He also noted her right side back pain was increasing, and epidural injections did not help. Plaintiff told Dr. DiGeronimo the pain made it hard for her to stand and walk (*Id.*). She reported migraines and back spasms in February 2017, and she was taking hydrocodone to control her pain (Tr. 535-38). Dr. DiGeronimo switched Plaintiff to

9

Aptiom in June 2017 to control her seizures and continued to prescribe hydrocodone and Percocet for pain and trigger point injections (Tr. 554).

In December 2017, Plaintiff reported she had had no seizures since switching to Aptiom five months earlier: "She has tremors only, no full on seizures." (Tr. 525). Plaintiff confirmed at her October 2018 hearing that her grand mal seizures are generally controlled with medications (Tr. 48) but that she has petit mal seizures two to three times per week that make her feel "[v]ery blah, very just out of it, non-coherent." (Tr. 49). Regarding her back pain, on October 31, 2018 (the day after her administrative hearing), Plaintiff had another lumbar spine MRI, which showed a "[d]iffuse disc bulge compressing the thecal sac and causing some narrowing of bilateral neural foramina" at L4-L5 and a "[d]iffuse disc bulge compressing the thecal sac" and L5-S1 (Tr. 626).

Considering this, the ALJ did not err in discounting Ms. McMicken's October 2017 opinion that Plaintiff is incapable of light work. While Ms. McMicken did not qualify as a treating source when Plaintiff filed her benefits applications, she constituted an "other source" under the regulations. The ALJ had to consider her opinion regarding Plaintiff's limitations, and he did so: the ALJ evaluated Ms. McMicken's treatment notes and opinion with the rest of the medical evidence and stated he assigned them less weight, in compliance with SSR 06-03p. *See Braun v. Berryhill*, No. 8:16-cv-794-T-DNF, 2017 WL 4161668, at *6 (M.D. Fla. Sept. 20, 2017) (affirming ALJ's decision to discount nurse practitioner's opinion because ALJ considered it along with the rest of the evidence and stated the weight he assigned it); *Gray v. Astrue*, No. 8:11-cv-2282-T-17TBM, 2012 WL 7170492, at *8 (M.D. Fla. Nov. 9, 2012) (same), *report and recommendation adopted* 2013

WL 646293 (M.D. Fla. Feb. 21, 2013), *aff'd* 550 F. App'x 850 (11th Cir. 2013); *Baliles v. Astrue,* 2011 WL 3961818, at *6 (M.D. Fla. Sept. 8, 2011) (noting nurse practitioner's opinions must be considered, though standing alone "are not entitled to any particular deference"). The ALJ's decision is supported by substantial evidence.

    ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on March 11, 2021.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE